**Garden City Sand Company et al., Appellants, v. Southern Fire Brick & Clay Company, Appellee.**

### Gen. No. 16,963.

1. CONTRACTS—*nonliability of third party for violation of contract*. Where the owner of land agreed with several other parties to open and maintain a mine for producing fire clay and bricks and to supply such parties exclusively therewith, and another corporation, with full knowledge of the terms of the contract, after its having been duly recorded, buys part of the land and replaces the partially erected plant with a more extensive one, and manufactures and markets such clay and brick at reduced prices, where the grantor is financially irresponsible, and when no fraud is shown on the part of the corporation to prevent him from performing his contract, such a corporation is not bound by the contract to which it is not a party, nor can an action be maintained against it either

at law or in equity for damages for loss of trade and profits by such parties, but they are entitled to a decree enjoining the violation of the contract.

2. DAMAGES—*where amount cannot be computed.* In an action for damages for loss of profits by reason of competition in violation of contract, when it cannot be determined from the evidence that such competition was the proximate or efficient cause of loss, or to what extent it was the cause and the amount cannot be computed, recovery cannot be had.

Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed January 29, 1913. *Certiorari* denied by Supreme Court (making opinion final).

EDWIN C. CRAWFORD and WILLIAM R. BURLEIGH, for appellants.

BEACH & BEACH, for appellees.

MR. JUSTICE GRAVES delivered the opinion of the court.

In September, A. D. 1901, Dick N. Lanyon, as party of the first part, James A. Heber and Willis S. Bonebrake, partners under the name of Heber and Bonebrake, as parties of the second part, The Garden City Sand Company, an Illinois corporation, as party of the third part, Hillsdale Fire Brick and Clay Company, an Illinois corporation, as party of the fourth part, an J. B. and Mrs. Maria Warner, as parties of the fifth part, entered into a quintilateral contract to continue in force for the period of eight years, in which it was, among other things, agreed, in substance, that Lanyon, the party of the first part, should open and maintain on certain lands owned by him at Hillsdale, Indiana, and therein described, a mine and plant for producing fire clay, the same to have a sufficient capacity to supply all the fire clay required by the business done under the contract, and should not work, lease or operate any other plant on any land owned by him in Indiana, during the life of the contract;

282     APPELLATE COURTS OF ILLINOIS.

Garden City Sand Co. v. S. Fire Brick & Clay Co. 177 Ill. App. 280.

that the second party should operate the plant; that the first and second parties should mine, grind, screen and load on cars and deliver to the third, fourth and fifth parties clay for 77½ cents per ton in such quantities and at such times as the third, fourth and fifth parties should from time to time order, not less than 1,040 tons of clay per month, and not to sell fire clay to any other persons or corporations than the third, fourth and fifth parties to the contract; that the third, fourth and fifth parties should buy no fire clay produced in Indiana except such as is produced by the first and second parties; "that they will make the greatest possible endeavor to sell all clay produced" by the first and second parties, and should "jointly but not severally" order and pay for not less than an average of 1,040 tons of clay per month and pay therefor 77½ cents per ton, and that they will enter into no combination or trust to limit the output of the plants of the first and second parties; that the contract should be binding on all the parties and on the heirs, executors, administrators and assigns of the first, second and fifth parties, and on the successors of the third and fourth parties. This contract was recorded in the recorder's office in the county where the lands described in it lies. Lanyon began the erection of a plant in accordance with the terms of the contract, but never finished it. In the spring of 1902 the appellee corporation, The Southern Fire Brick and Clay Company, was formed, and with full knowledge, not only of the existence of the contract, but also of its terms, bought the land from Lanyon, on which the partially erected plant stood, the same being part of the premises described in the contract above mentioned. It pulled down so much of the plant as Lanyon had erected and built in its place a much more extensive plant, which was completed by the spring of 1903, when appellee began to put on the market clay, both raw and manufactured, from the part of the land purchased by it from Lanyon, at a price low enough "to

move its products,'' as low in some instances as 90 cents per ton, which it continued to do until enjoined from so doing at the instance of appellant. After appellee had purchased the land and before the Lanyon plant was pulled down and while appellee was building its new plant, appellants notified appellee in writing of their contract and their intention to insist upon all their rights under it. To these notices and to the rights of appellants, appellee paid no heed. On April 4, 1903, after the parties of the third, fourth and fifth part to this contract, the appellants here, learned that appellee was mining and disposing of fire clay from the lands covered by the contract, filed their bill in chancery in the Superior Court, praying for an injunction restraining the appellee from continuing to mine and sell the clay, and that appellee be required to account to appellants for all the clay mined from the Lanyon lands in violation of the contract. To this bill appellee and the parties of the first and second part to the contract were all eventually made defendants. Both the Appellate and Supreme Courts in due course determined the rights of the parties to the bill, so far as the question of injunction was concerned, and held that the complainants in the bill were entitled to the relief sought and remanded the cause to the Superior Court for further proceedings not inconsistent with the opinion of the Appellate Court. See Garden City Sand Co. v. Southern Fire Brick & Clay Co., 124 Ill. App. 599, aff'd 223 Ill. 616. In pursuance to the mandate of the Appellate Court, the injunction prayed for in the bill was, on March 5, 1907, ordered and the writ was thereafter issued, and the cause was referred to a master in chancery to hear evidence and take testimony to ascertain what amount of damage, if any, the complainants or either of them had sustained by reason of the removal of the clay, and whether or not and to what amount, if any, either of appellants had been damaged by the failure

284   APPELLATE COURTS OF ILLINOIS.

Garden City Sand Co. v. S. Fire Brick & Clay Co. 177 Ill. App. 280.

of Lanyon to complete his contract, and to report his conclusions of law and fact. After taking the evidence the master reported his conclusion to be that appellee had mined and sold fire clay from the premises in question and had made and sold brick from the same between April 3, 1903, and September, 1906, to complainants' customers in competition with complainants and at reduced prices; that complainants had been damaged thereby and that appellee should respond in damages to appellants ''for their loss of business occasioned by said competition and reduced prices;'' that prior to April 3, 1903, appellants were in the business of selling and sold at a profit fire clay and brick which they obtained from the Hillsdale Fire Brick & Clay Company at a uniform price of $1.00 per ton for fire clay and $9.00 per thousand for brick, and that there was a market for substantially all the fire brick and clay the Hillsdale Company could produce; that after appellee began to market the clay from the Lanyon lands the business of appellants began to fall off and by the time appellee was enjoined from mining the clay on the Lanyon lands, appellants were doing business at a loss and did not renew the lease of the lands from which they were mining the clay marketed by them, but went out of business and that appellants had lost in profits for the years 1903, 1904, 1905 and 1906, the total of $44,070.26, from what they would have made if the profits for each of those years had equaled the amount made by them for the year 1902. The master further found that appellee during the four years above mentioned, mined 55,501 tons of clay; that the average market price of that period was $1.00 per ton; that if the 55,501 tons of clay mined and marketed by appellee had been delivered to appellants and marketed by them they would have made a profit of 22½ cents per ton thereon, that being the difference between the contract price of 77½ cents per ton and $1.00 per ton, the market price, or a total of $12,487.72, and that appellants were entitled

to a decree against appellee for the total of $44,070.26, and $12,487.72, or $56,557.98.   Objections and exceptions were duly filed by appellee to the master's report and on a hearing those exceptions relating to appellants' right to recover damages from appellee, and the amount thereof, were sustained by the court and a decree was entered denying appellants' right to such damages.

This appeal presents for determination, first, the question whether appellee, The Southern Fire Brick & Clay Company, who was not a party to the contract in question, is, under the averments in the bill and the facts shown by the evidence, liable in damages to any amount to appellants.

It is neither averred in the bill nor shown by the evidence that any fraud was practiced by appellee to prevent Lanyon or Heber and Bonebrake from performing the contract in question, and it is expressly conceded by appellant that no action at law by them in tort or on a contract would lie against appellee for damages on account of any averment in the bill or fact proven by the evidence, but it is strenuously insisted that appellee is liable to appellants for all loss of profits on the business done by appellants and all loss of profits which appellants would have made if Lanyon and Heber and Bonebrake had performed their contract and appellee had not mined and put on the market at reduced prices the clay from the Lanyon lands in competition with the business of appellants, and that as a court of equity had assumed jurisdiction of the case, to enjoin appellee from mining and selling clay in violation of the Lanyon contract, that court has the right to and should retain jurisdiction of the case to do complete justice between the parties, by requiring appellee to respond in damages to appellants for all loss sustained by them in consequence of the competition created by the sale of the output of appellee from the lands in question.   These questions are not now open for our determination.   The

286 APPELLATE COURTS OF ILLINOIS.

Garden City Sand Co. v. S. Fire Brick & Clay Co. 177 Ill. App. 280.

Supreme Court, when this case was before it (223 Ill. 616), said:

"The evidence shows that The Southern Fire Brick and Clay Company was not a party to the original contract and was not bound by it. Appellees could not maintain an action at law against it for damages sustained. It was one of the offenders, if not the chief offender, and was threatening to put the product of its mine on the open market in competition with appellees. If no relief could be obtained at law by way of damages the injury could not be prevented without recourse to equity by injunction, upon the theory that the appellant corporation had full knowledge of the terms of the contract before it purchased the land. As to Lanyon, the bill alleges that by the violation of the terms of the contract appellees have sustained and will sustain irreparable injury. The record is full of evidence as to the financial irresponsibility of Lanyon. He claims himself that he failed to carry out his part of the contract because of his financial inability to do so. If this was true, he certainly was in no condition to respond in damages to appellees in an action at law, and hence they were entitled to equitable relief against him to prevent his doing that which he had solemnly covenanted not to do."

No other meaning can be gathered from that opinion than that appellee, The Southern Fire Brick and Clay Company, was not liable in damages to appellants and because they were not so liable, and because Lanyon, by reason, of financial irresponsibility, could not be made to so respond, therefore the violation of the contract should be restrained by injunction.

Aside from the fact that the Supreme Court has settled these questions in this very case, the evidence taken by the master after the case was remanded is wholly insufficient to show that appellee is chargeable with causing any loss or damage to appellants. It does disclose that appellee did not purchase all the lands covered by the Lanyon contract, but that Lanyon retained 60 acres of the land on which there was many

times the amount of clay appellants had contracted to take, and that Lanyon built thereon a plant and delivered to appellants all the clay they could use, and demanded of appellants that they take the 1,040 tons of clay per month contracted for by them, but that they refused to take the same, because they were unable to dispose of it. The evidence further tends to show that appellants' inability to dispose of the clay was due, in part at least, to the falling off of the demand. While the competition of appellee in the trade may have had some effect in preventing appellants from selling the amount contracted for by them, there is no evidence by which it can be determined how much, if any, of the falling off of trade was due to the new competition and how much was due to the falling off of the demand. In other words, there is no evidence by which it can be determined that the competition of appellee was the proximate or even an efficient or appreciable cause of the falling off of appellants' trade. Even if a right to damages clearly existed against appellee under the law, there is nothing in this record from which the amount could be computed. Besides this, the parties had no right to make a contract in restraint of trade or competition and the Supreme and Appellate Courts both held that this contract was not one in restraint of trade or competition, so that even if appellants did mine and sell the clay in violation of the contract, the competition created by selling it, and the loss of trade or profit resulting from such competition was not among the things contemplated by the parties or controlled or sought to be controlled by the contract.

The decree of the Superior Court is, therefore, affirmed.

*Decree affirmed.*